UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SHERRY DESPAIN                                                                   PLAINTIFF

V.                              NO. 3:17-CV-161-BD

SOCIAL SECURITY ADMINISTRATION                                                   DEFENDANT

## ORDER

**I. Introduction:**

On June 30, 2015, Sherry Despain applied for disability benefits, alleging disability beginning on May 4, 2015. (Tr. at 19) Ms. Despain's claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Despain's application. (Tr. at 31) Ms. Despain requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Ms. Despain filed this case seeking judicial review of the decision denying her benefits.

For the reasons stated below, the Court[1] must affirm the decision of the Commissioner.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II. The Commissioner's Decision:

The ALJ found that Ms. Despain had not engaged in substantial gainful activity since the onset of her alleged disability, May 4, 2015. (Tr. at 21) At step two of the five-step analysis, the ALJ found that Ms. Despain had the following severe impairments: obesity, osteoarthritis of both knees, degenerative disc disease of the lumbar spine, pes planus, anxiety, and depression. *Id.*

After finding that Ms. Despain's impairments did not meet or equal a listed impairment (Tr. at 22), the ALJ determined that Ms. Despain had the residual functional capacity ("RFC") to perform the full range of work at the light exertional level, with some limitations. She would be limited to work with no climbing of ladders, ropes, or scaffolds, and no balancing requirements. (Tr. at 24) She could only occasionally climb ramps and stairs, and only occasionally stoop, kneel, crouch, and crawl. *Id.* She would be limited to work where no lower extremity foot control operation is necessary. *Id.* Further, she would be limited to unskilled, simple, routine, and repetitive job tasks, where the supervision is simple, direct, and concrete, consistent with specific vocational profile (SVP) 1 or 2 jobs that could be learned within 30 days. *Id.*

The ALJ found that Ms. Despain was unable to perform any of her past relevant work. (Tr. at 29) At step five, however, the ALJ relied on the testimony of a Vocational Expert ("VE") to find, based on Ms. Despain's age, education, work experience and RFC, that she was capable of performing work in the national economy as press operator,

machine tender, marking clerk, or independent bench operator. (Tr. at 30) The ALJ determined, therefore, that Ms. Despain was not disabled. *Id.*

### III. <u>Discussion</u>:

#### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

#### B. Ms. Despain's Arguments on Appeal

In this appeal, Ms. Despain contends that the ALJ's decision to deny benefits is not supported by substantial evidence. She argues that the RFC was incorrect because she could not perform work at the light level. She also argues that the ALJ did not give proper weight to the opinion of her treating physician, Michael Crawley, M.D.

Ms. Despain alleges problems with her feet, knees, and back. On October 3, 2010, she was treated by a podiatrist for arthralgia of the metatarsal joint of the right foot

3

associated with dorsal spurring. (Tr. at 404) Meloxicam helped some. *Id*. She next complained of foot pain on November 4, 2013, when a clinical exam showed full range of motion in both feet. (Tr. at 363-366) She was diagnosed with flatfoot, soft tissue foot pain, and localized osteoarthritis. *Id.* Her doctor suggested injections for pain. *Id*. The record does not indicate she followed that advice. A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005)

    Ms. Despain saw a podiatrist on July 9, 2015 for foot pain. (Tr. at 319-322). The podiatrist noted edema and inflammation in her ankles and mid foot. *Id*. No medications were prescribed or further treatment recommended. While treatment for foot problems was sparse, the ALJ did account for pain by limiting Ms. Despain to work where no lower extremity foot control operation was required. That restriction accurately accounted for her limitations with respect to her feet.

    Ms. Despain had ACL reconstruction with two metallic bone screws in her left knee years prior to the alleged disability onset date. (Tr. at 379-382) On April 22, 2013, a physical examination of her knees showed full range of motion with no instability. *Id*. Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Her doctor diagnosed moderate arthritis in her knees and prescribed an anti-inflammatory, meloxicam. *Id*. In July 2013, Ms. Despain complained of mild knee pain, but reported that her symptoms were improved by rest and analgesics.

(Tr. at 376-378) At that appointment, she had full range of motion and was intact neurovascularly. *Id.*

On August 8, 2013, Ms. Despain had a partial medial meniscectomy, and her symptoms improved after surgery. (Tr. at 373-375) Improvement in strength and diminished pain supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan,* 968, F.2d 725, 728 (8th Cir. 1992). Ms. Despain's doctor released her to work duty in September. (Tr. at 372)

On October 24, 2013, Ms. Despain had an x-ray of her right knee and left hip, which showed arthritis, a small calcification in the medial gutter, and mild degenerative changes of the left hip. (Tr. at 367-371) Objective tests showing mild-to-moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). At that time, Ms. Despain's left knee showed no tenderness, normal motor tone, and full range of motion. (Tr. at 368) She declined a steroidal injection for the right knee. *Id*. On May 13, 2016, Ms. Despain reported to her primary care physician, Dr. Crawley that current medication was not effective for knee pain, but she showed normal range of motion. (Tr. at 444) She was prescribed pain medication. *Id.*

As for her back, MRIs in 2009 and 2010 showed mild disc bulging, degenerative disc disease, left sided facet hypertrophy, and mild left-sided neuroforaminal narrowing. (Tr. at 419-421) On May 4, 2015, Ms. Despain had normal range of motion. (Tr. at 387-388) A May 2015 MRI showed small left foraminal disc herniation at L5-S1 with no

spinal stenosis, but there was mild canal narrowing and facet hypertrophy. (Tr. at 432-440) On May 13, 2015, although range of motion in Ms. Despain's back was normal, Dr. Crawley referred her for neurosurgery for a herniated nucleus pulposus. (Tr. at 393-394). She did not pursue that course of treatment.

Ms. Despain attended physical therapy sessions in June and July 2015. (Tr. at 296-319) On June 17, 2015, she responded well to therapy and could rotate further with each repetition. (Tr. at 301) On June 22, 2015, she tolerated the exercises and was feeling more relaxed afterwards. (Tr. at 307) By June 24, 2015, her pain had decreased. (Tr. at 309) She was encouraged to keep moving. (Tr. at 303) On July 1, 2015, she told her physical therapist that she was feeling great and did not feel pain throughout the session. (Tr. at 313) On July 9, 2015, she reported that she was not feeling too bad. (Tr. at 352) This improvement throughout physical therapy indicates that Ms. Despain's pain was not as disabling as she alleged.

Ms. Despain testified that she did not walk with an assistive device and could sit and stand intermittently. (Tr. at 49-50) She said medication helped when she took it. *Id*. She did not treat her foot pain with anything more than pain medication. (Tr. at 55) She never pursued surgery for her back. (Tr. at 49) Ms. Despain said she attended to her personal hygiene, cooked, did laundry, performed chores, went to the store, and fed her pets. (Tr. at 51-52) Such daily activities undermine her claims of disability. *Shannon v.*

*Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

In general, the record reflects that Ms. Despain had some foot, knee, and back problems, but not to such a degree that they would preclude work at the light exertional level. The controlling regulation defines light work as requiring "the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, a good deal of walking or standing, and involving some pushing and pulling of arm or leg controls when sitting most of the time." 20 C.F.R. § 404.1567. The ALJ did place further restrictions on the full range of light work in his RFC, which restrictions fully incorporated the medical findings. Ms. Despain's mild objective findings, conservative treatment, response to medication and physical therapy, and reports of daily activities support the RFC for light work with postural limitations.

Also, the ALJ gave proper weight to the opinion of Dr. Crawley, who found moderate-to-marked limitations in physical functional capacity, stating that Ms. Despain could sit for only two hours in an eight-hour workday and would need frequent rest periods. (Tr. at 441-442) First, the ALJ accounted for such postural limitations by providing a sit-stand option in the RFC, consistent with Ms. Despain's own admission that she could alternate sitting and standing. Second, Dr. Crawley did not point to any objective findings in his statement, and his own clinical exams often showed normal range of motion, normal gait, and normal straight-leg raises over the course of his

treatment. (Tr. at 356, 358, 362, 387-399) *See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)(the ALJ may discount a treating physician's opinion where he renders inconsistent opinions that undermine his credibility).

Dr. Crawley did not reference the positive response to physical therapy and pain medications. And his statement was a simple two-page check-the-box form; the ALJ was correct to give the statement little weight because a conclusory checked box has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). The ALJ gave proper weight to the opinion of Dr. Crawley.

### IV. **Conclusion**:

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC incorporated all of Ms. Despain's limitations; and the ALJ gave appropriate weight to the Dr. Crawley's opinion. The finding that Ms. Despain was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is, affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 13th day of April, 2018.

_____
UNITED STATES MAGISTRATE JUDGE